IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 15 CR 243 |
| ) | |
| ROBERT ALLEGRA, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION AND ORDER

Defendant Robert Allegra ("Allegra") has moved to suppress all statements he made during a post-arrest interview on March 25, 2015 after allegedly invoking his right to counsel. *See Miranda v. Arizona*, 384 U.S. 436, 469-73 (1966). The Government counters that Allegra did not unambiguously invoke his right to counsel in a way that required its agents to stop questioning him. I grant Allegra's motion to suppress for the reasons stated below.

I.

Allegra is a licensed pilot who owns an aviation business, Royal Palm Aviation, Inc., based in Westmont, Illinois. In or around December 2013, the Federal Bureau of Investigation ("FBI") and Drug Enforcement Agency ("DEA") launched a joint investigation into whether Allegra was using his private planes to engage in drug trafficking. The FBI/DEA investigation

1

culminated in Allegra's arrest at the Van Nuys Airport near Los Angeles, California on March 25, 2015.

At the time of Allegra's arrest, the Government believed he was about to fly two drug couriers carrying one hundred pounds of cocaine from Los Angeles to Chicago in exchange for $205,000 in total compensation. Allegra allegedly received a down payment of $30,000 in cash five days earlier from a Government informant and a check for $25,000 from the two drug couriers moments before he was arrested.

After his arrest, Allegra was taken to the Los Angeles Airport police station and interviewed by DEA Special Agent Patrick Brosnan ("Agent Brosnan") and FBI Special Agent David Ostrow ("Agent Ostrow") (collectively, "the Agents"). The parties have not raised any factual disputes about what occurred during the interview, which was videotaped and later transcribed.

At the beginning of the interview, Agent Ostrow advised Allegra of his *Miranda* rights and presented him with the FBI's standard waiver form. *See* Dkt. No. 27-1. Allegra signed the form immediately below the following language: "I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present." *Id*.

Allegra mentioned a lawyer three times during his interview.  Although Allegra argues that only his third reference to counsel amounted to an invocation of his *Miranda* rights, I will describe all three references because determining whether a suspect invoked the right to counsel requires consideration of the full context preceding the alleged invocation.  *See U.S. v. Hampton*, 708 F.3d 938, 945 (7th Cir. 2013) (courts should consider prior, but not subsequent context when deciding whether a suspect invoked right to counsel).

After expressing his willingness to cooperate, Allegra said, "You tell me what you need.  Do I need an attorney?  Do I not need an attorney?"  Tr. At 12.[1]  Agent Brosnan responded, "That's all up to you."  *Id.*  Allegra repeated his question: "Do you want me to work with an attorney?"  *Id.*  Once again, Agent Brosnan demurred: "We can't give legal advice.  That's up to you."  *Id.*

Allegra's second reference to counsel occurred during an exchange in which he asked Agents Brosnan and Ostrow to clarify what benefits he would receive for cooperating.  After the Agents rejected Allegra's attempt to negotiate the terms of his cooperation, he said, "I mean, I probably should have counsel

---

[1] All "Tr." citations refer to the transcript of Allegra's post-arrest interview that the Government submitted to chambers on August 28, 2015.  There are no material difference between that transcript and the "updated" transcript that Allegra submitted to chambers on November 6, 2015.

3

then, because I don't know what you want me to tell you other than I got a check--you tell me that's your check and not...not whoever hired me, Jason's check?" Tr. at 14. Without any further discussion of counsel, the conversation then turned to the $30,000 in cash that Allegra received five days before his arrest. *Id*. at 14-15.

Allegra's third and final reference to counsel occurred immediately after Agent Brosnan explained that Allegra would be charged and put in jail pending a bond hearing if he refused to cooperate. *Id*. at 15. That threat led to the following exchange:

| | |
|---|---|
| Allegra: | Well, I need to talk to somebody because I don't know what I'm looking at right now. So can you provide me with an attorney? |
| Agent Ostrow: | You want to speak to an attorney that's... |
| Allegra: | So we can have one. |
| Agent Ostrow: | That's your right if you want to talk to an attorney. That's absolutely fine and we respect that.<br><br>But what happens now is, basically, it's done. You get your attorney and then we will convene back in Chicago.<br><br>But right now you will be...you will be charged and you will be locked up today. But you want to speak to an attorney, that's fine. I respect that decision. |
| Allegra: | I mean... |

| Agent Brosnan: | I mean, it hurts you a little...I mean, like he said, it's up to you, you want to speak to an attorney, go ahead. But for you to help us, it would be better if you were out and you get more consideration if people didn't know you were arrested and you can go home and-- |
|---|---|
| Allegra: | But you guys aren't telling me what you want me to do. |
| Agent Ostrow: | The truth. It's not worth getting into anything else besides the truth. |
| Allegra: | For me providing you what I know, what do you want me to do from there? That's just...I'm asking a straight up question. |
| Agent Brosnan: | If you are truthful with us, we can get into other things that we think you are involved in and get some more... |

*Id.* at 16.

The conversation then turned to how Allegra knew someone named Jason or "Jay" who had hired him to make several flights. *Id.* at 16-17. Allegra eventually admitted that he agreed to fly cocaine from Los Angeles to Chicago for one of the Government's informants. *Id.* at 21, 23. He was later indicted for attempted possession of five or more kilograms of cocaine with intent to distribute in violation of 21 U.S.C. § 846.

## II.

Allegra has moved to suppress all statements he made after his third reference to counsel--"So can you provide me with an attorney?"--during his post-arrest interview. It is the

Government's burden to show that Allegra "voluntarily, knowingly and intelligently" waived his right to counsel. *Miranda*, 384 U.S. at 444; *see also J.D.B. v. North Carolina*, 131 S. Ct. 2394, 2401 (2011).

A.

*Miranda* held that "[i]f the individual [in custody] states that he wants an attorney, the interrogation must cease until an attorney is present." 384 U.S. at 474. "If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Id.* at 475.

In *Edwards v. Arizona*, 451 U.S. 477 (1981), the Court clarified that "when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Id.* at 484; *see also Smith v. Illinois*, 469 U.S. 91, 100 (1984) (per curiam) ("[A]n accused's *post-request* responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself."). "[H]aving expressed his desire to deal with the police only through counsel, [the suspect] is

6

not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards*, 451 U.S. at 484-85.

"If the police do subsequently initiate an encounter in the absence of counsel (assuming there has been no break in custody), the suspect's statements are presumed involuntary and therefore inadmissible as substantive evidence at trial, even where the suspect executes a waiver and his statements would be considered voluntary under traditional standards." *McNeil v. Wisconsin*, 501 U.S. 171, 176-77 (1991) (describing *Edwards* as a "second-layer of prophylaxis for the *Miranda* right to counsel").

B.

The Supreme Court's leading case on how to determine whether a suspect has invoked the right to counsel during a custodial interrogation is *Davis v. U.S.*, 512 U.S. 452 (1994). *Davis* holds that "the suspect must unambiguously request counsel," measured in objective terms. *Id*. at 459. "Although a suspect need not speak with the discrimination of an Oxford don, he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id*. (internal quotation and citation omitted).

In contrast, "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, [the Court's] precedents do not require the cessation of questioning." *Id.* (emphasis in original). The Court also declined to require officers to ask clarifying questions when a suspect's reference to counsel is ambiguous or equivocal. *Id.* at 461.

C.

The Supreme Court and the Seventh Circuit have held that a variety of verbal formulations are sufficient to invoke the *Miranda* right to counsel. *See, e.g.*, *Smith*, 469 U.S. at 96-97 ("Uh, yeah, I'd like to do that," in response to inquiry about whether suspect wanted an attorney present during questioning); *Edwards*, 451 U.S. at 479 ("I want an attorney before making a deal."); *U.S. v. Hunter*, 708 F.3d 938, 943-44 (7th Cir. 2013) ("Can you call my attorney?"); *U.S. v. Wysinger*, 683 F.3d 784, 790-91 (7th Cir. 2012) ("I mean, but can I call one [an attorney] now?"); *U.S. v. Martin*, 664 F.3d 684, 688-89 (7th Cir. 2011) ("I'd rather talk to an attorney first before I do that," in reference to providing a written statement); *Aleman v. Village of Hanover Park*, 662 F.3d 897, 905 (7th Cir. 2011) ("I gotta call my guy," referring to the suspect's lawyer); *U.S. v. Lee*, 413 F.3d 622, 626 (7th Cir. 2005) ("Can I have a lawyer?");

8

*see also Lord v. Duckworth*, 29 F.3d 1216, 1221 (7th Cir. 1994) ("I think I should call my lawyer"; "I have to get me a good lawyer, man. Can I make a phone call?"; "Can I talk to a lawyer? At this point, I think maybe you're looking at me as a suspect, and I should talk to a lawyer. Are you looking at me as a suspect?" (quoting cases from other circuits with approval)). These cases show that "there is no exact formula or magic words for an accused to invoke his right [to counsel]." *Lee*, 413 F.3d at 625.

In contrast, the following statements have been deemed too ambiguous or equivocal to invoke the *Miranda* right to counsel. *See, e.g.*, *Davis*, 512 U.S. at 455 ("Maybe I should talk to a lawyer."); *U.S. v. Thousand*, 558 F. App'x 666, 671-72 (7th Cir. 2014) ("I think I need a lawyer, I don't know, but I want to cooperate and talk."); *U.S. v. Hampton*, 675 F.3d 720, 727-28 (7th Cir. 2012) ("Yeah, I do, but you..."); *U.S. v. Shabaz*, 579 F.3d 815, 818 (7th Cir. 2009) ("[A]m I going to be able to get an attorney?"); *U.S. v. Peters*, 435 F.3d 746, 752 (7th Cir. 2006) ("I'd like to get to that part now," in reference to pretrial services, where suspect's financial eligibility for appointed counsel would be determined) *U.S. v. Walker*, 272 F.3d 407, 413-14 (7th Cir. 2001) (suspect said he "wasn't sure whether he should talk to [agent] because he was afraid it would piss his lawyer off" and later told agent to "go ahead" with

9

interrogation in response to clarifying question about whether suspect wanted counsel); *U.S. v. Muhammad*, 120 F.3d 688, 698 (7th Cir. 1997) (suspect made "cryptic reference to 'an attorney,'" declined opportunity to call one, and then executed waiver); *U.S. v. Buckley*, 4 F.3d 552, 558-59 (7th Cir. 1993) ("I don't know if I need an attorney."); *Lord*, 29 F.3d at 1220-21 ("I can't afford a lawyer, but is there any way I can get one?" after giving eighty minute recorded statement in which suspect made incriminating admissions). "A common point among the statements that have been deemed insufficient is that they do not clearly imply 'a present desire to consult with counsel...'" *Shabaz*, 579 F.3d at 819 (quoting *Lord*, 29 F.3d at 1221).

D.

Under these precedents, Allegra's question to the Agents--"So can you provide me with an attorney?--was sufficient to invoke his right to counsel and should have ended the interrogation. His words are indistinguishable from the suspect's question in *Lee* that was deemed sufficient to invoke the right to counsel. *See* 413 F.3d at 626 ("Can I have a lawyer?"); *see also Wysinger*, 683 F.3d at 795 ("I mean, but can I call one [an attorney] now?"). "Instead of using a [hedge] word like 'should' or 'might,' which would suggest that [Allegra was] still undecided about whether [he] wanted a lawyer...[he] used the word 'can.'" *Hunter*, 708 F.3d at 943-44. The Seventh

Circuit has described "can" as a "decisive word" that signals the suspect is "inquiring into [his] present ability to be 'able to' obtain a lawyer or to 'have the opportunity or possibility to' obtain a lawyer." *Id.* (quoting dictionary definition).

The Agents' responses to Allegra's question provide additional support for the conclusion that he successfully invoked his right to counsel.[2] If a reasonable officer in the Agents' position would have understood Allegra's question as a request for counsel, they were required to stop the interview. *See Davis*, 512 U.S. at 459. After explaining the consequences of invoking the right to counsel, Agent Ostrow said, "But you want to speak to an attorney, that's fine. I respect that decision." Tr. at 16. Agent Brosnan added, "[Y]ou want to speak to an attorney, go ahead," before encouraging Allegra to reconsider his choice. *Id*. These responses show that the Agents subjectively understood that Allegra was asking for a lawyer. Absent a showing that the Agents' subjective understanding of Allegra's request was objectively unreasonable--an argument the Government has wisely declined to make--their verbal responses are additional evidence that

---

[2] While courts may not consider a suspect's statements after invoking the right to counsel for purposes of "cast[ing] retrospective doubt on the clarity of the initial request," *Smith*, 469 U.S. at 100, *Davis* directs courts to evaluate how a "reasonable police officer" would have understood the request, 512 U.S. at 459.

11

Allegra successfully invoked his right to counsel. *See U.S. v. Martin*, 664 F.3d at 693 (Wood, J., dissenting) (characterizing officer's reaction to suspect's reference to counsel as "instructive" on whether *Miranda* right was successfully invoked).

E.

The Government attempts to equate Allegra with the suspect in *Hampton* who engaged in a "pattern of equivocation" about whether he wanted counsel present during his interrogation. 675 F.3d at 727. The suspect in *Hampton* initially waived his *Miranda* rights, started giving a statement, and then invoked his right to counsel. *Id*. at 724. As officers were preparing to return the suspect to his jail cell, he changed his mind and asked to speak with the officers without an attorney present. *Id*. When asked if wanted a lawyer, the suspect said, "Yeah, I do, but you...," followed by five seconds of silence. *Id*. The suspect's next words were "But see, I'm askin' you is this gonna effect what's goin' on?" *Id*. The officers made repeated efforts to clarify whether the suspect wanted counsel, deflected his attempts to negotiate, and cautioned him about venturing into the facts of the case before making that decision. *Id*. at 724-25. At one point, the suspect said, "I think, I, I felt like it should have been an attorney here cause that's what I asked for. You know what I'm saying? Before we talked..." *Id*.

12

at 725. Moments later, the suspect said, "No, I don't want no attorney for right now," and then made incriminating statements. *Id*.

The Seventh Circuit held that neither of Hampton's references to an attorney after his initial invocation of the right to counsel--which the officers respected--was sufficiently clear to reinvoke the right. The first alleged reinvocation-- "Yeah, I do, but...," in answer to whether he wanted an attorney--included a "hedge word." *Id*. at 727-78. The second alleged reinvocation--"I think, I, I felt like it should have been an attorney here cause that's what I asked for"--came only after the suspect "had twice mentioned an attorney only to change his mind and reinitiate the conversation with the officers" *Id*. at 728. In light of that context, "a reasonable officer would have understood that Hampton might want a lawyer, but also might want to proceed without one." *Id*.

Hampton's pattern of equivocation is nothing like Allegra's straightforward request: "So can you provide me with an attorney?" Tr. at 24. To be sure, Allegra made two equivocal references to an attorney before making the request quoted above. Allegra's temporary vacillation over whether he wanted counsel, however, is a far cry from Hampton's prolonged back-and-forth with officers. Moreover, whereas Hampton used a hedge word ("but") and the past tense ("should have been") in his

13

purported invocations of the right to counsel, Allegra's request suffers from neither defect. To equate Allegra with Hampton is to ignore the facts of their respective post-arrest interviews.

The other case to which the Government analogizes, *Lord v. Duckworth*, 29 F.3d 1216 (7th Cir. 1994), is also distinguishable. The suspect in *Lord* said, "I can't afford a lawyer but is there any way I can get one?" after he had "confessed in a lengthy [eighty minute] tape-recorded statement...and agreed to assist the police in searching for the murder weapon." *Id*. at 1221. In light of that context, the Seventh Circuit held that Charles Lord ("Lord") was "most likely...asking for a clarification of his right to counsel at trial." *Id*.

Unlike Charles Lord, Allegra asked for counsel during the early stages of his post-arrest interview while he was trying to negotiate the terms of his possible cooperation. Moreover, Allegra did not make any incriminating admissions before asking for counsel that could support an inference (similar to the one made in *Lord*) that he was asking for an attorney only for purposes of future court proceedings. Allegra denied knowing that the suitcases aboard his plane contained cocaine and said he thought he was transporting money. Tr. at 3, 6, 8-9, 12-13. Allegra admitted that he had flown cash to or from Texas, but denied knowing the source of the money. *Id*. at 10, 12-13. That

14

limited admission is far different from Lord's murder confession

and promise to help agents find the weapon he used.

In sum, although Allegra and Lord used similar words--"So
can you provide me with an attorney?" (Allegra) and "I can't
afford a lawyer but it there any way I can get one?" (Lord")--
the circumstances in which they uttered those words were quite
different.  Allegra's request came during the early stages of
his post-arrest interview rather than after an eighty minute
recorded statement in which he admitted to the crime under
investigation.  Therefore, Allegra's words did not carry the
same meaning as the belated and legally ineffective reference to
counsel in *Lord*.

F.

Where, as here, "the accused invoked his right to counsel,
courts may admit his responses to further questioning only on
finding that he (a) initiated further discussions with the
police, and (b) knowingly and intelligently waived the right he
had invoked." *Smith*, 469 U.S. at 95.  "A suspect initiates
conversation if he makes a statement that 'evince[s] a
willingness and a desire for a generalized discussion about the
investigation.'"  *U.S. v. Robinson*, 586 F.3d 540, 545 (7th Cir.

15

2009) (quoting *Oregon v. Bradshaw*, 462 U.S. 1039, 1046 (1983)).[3] "By itself, a suspect's initiation of conversation does not necessarily constitute a waiver of his right to counsel; the suspect's waiver must also be knowing and voluntary, under the totality of the circumstances, before law enforcement agents engage in any interrogation." *Id*. Ultimately, "the burden remains upon the prosecution to show that subsequent events indicated a waiver of the Fifth Amendment right to have counsel present during the interrogation." *Bradshaw*, 462 U.S. at 1044.

The Agents' responses to Allegra's request for counsel were similar to the law enforcement response in *Lee* that was "a matter of some concern" to the Seventh Circuit. 413 F.3d at 627. After Kenneth Lee asked, "Can I have a lawyer?" one of the officers opined that "a lawyer would tell him not to say anything." 413 F.3d at 624. The officer further advised that "Lee could help himself by talking, and that if he wanted to take responsibility, he should talk to [the two officers]. Lee responded that he did want to help himself out and talk." *Id*. On those facts, the Seventh Circuit observed that the officer's response was "apparently designed to persuade" Lee not to speak with a lawyer, but the court declined to decide whether that

---

[3] Consistent with the Supreme Court's admonition, courts have been loath to "build a superstructure of legal refinements" around what it means for a suspect to "initiate" further discussion with the police after initially invoking the right to counsel. *See Bradshaw*, 462 U.S. at 1045.

16

form of persuasion violated *Miranda* and *Edwards* because the admission of Lee's subsequent confession was harmless error. *Id*. at 627.

The Agents' responses to Allegra's request for counsel were even more coercive than the tactics used in *Lee*. Agent Ostrow told Allegra that he would be charged and "locked up" if he persisted in his request for counsel. Tr. at 16. Agent Brosnan added that it would "hurt" Allegra to request counsel whereas he would "get more consideration" if he cooperated with the FBI and DEA now rather than later. *Id*. At a minimum, Agent Brosnan's attempt to persuade Allegra to waive his previously invoked right to counsel casts doubts on whether Allegra initiated further discussion with the Agents (such that the *Edwards* presumption of involuntariness would no longer apply to his subsequent statements) or simply succumbed to badgering (which *Edwards* prohibits). *See Michigan v. Harvey*, 494 U.S. 344, 350 (1990) (explaining that *Edwards* "prevent[s] police from badgering a defendant into waiving his previously asserted *Miranda* rights).

*Robinson* points the way towards resolution of whether Allegra initiated a discussion with the Agents or succumbed to badgering. In *Robinson*, the Seventh Circuit held that the suspect's "unprompted question, 'What do you want?' was sufficient under *Edwards* to initiate a conversation." 586 F.3d

at 545 n.6; *see also Hampton*, 675 F.3d 720 (assuming suspect invoked right to counsel, suspect reinitiated discussion by asking officers "how the presence of an attorney would affect his situation").

At first glance, Allegra's first statement after invoking the right to counsel--"But you guys aren't telling me what you want me to do," Tr. at 16--appears similar to the facts in *Robinson*. The Seventh Circuit was quick to note, however, that a suspect's words cannot be divorced from context: "[I]f the officers' conduct prior to the point when [the suspect] initiated further conversation amounted to interrogation, such interrogation would have violated *Edwards* and rendered the subsequent initiation and waiver invalid." *Robinson*, 586 F.3d at 545. The hypothetical scenario posited in *Robinson* is precisely what happened to Allegra. In other words, Agent Brosnan's response to Allegra's invocation of the right to counsel constituted prohibited interrogation because the Agent "should have known that the practices [he] employed were 'reasonably likely to elicit an incriminating response' from [Allegra]." *Id*. at 546 (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)).[4] Indeed, the entire point of Agent Brosnan's

---

[4] An "incriminating response" means "any response--whether inculpatory or exculpatory--that the prosecution may seek to introduce at trial." *Innis*, 446 U.S. at 301 n.5 (emphasis from original removed).

18

comment was to persuade Allegra to change his mind about invoking his right to counsel so that the interview could continue.  It is axiomatic that a "police practice...designed to elicit an incriminating response from the accused" after he has invoked the right to counsel is a prohibited interrogation.  *See Innis*, 446 U.S. at 301 n.7.

In sum, Allegra's statements after invoking his right to counsel are presumptively involuntary--and therefore inadmissible--under *Edwards* because they were made in response to prohibited interrogation.

### III.

Allegra's motion to suppress is GRANTED for the reasons stated above.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: November 19, 2015